The bill prays for a decree for discovery and accounting. The facts are substantially that the complainant sometime before March, 1939, maintained and managed a beauty salon in Union City, New Jersey. Numbered among her patrons was the defendant Louise Ditter. In the course of the visits of Louise to complainant's shop, she confided to complainant that she had invested money in the stock market, and profited immensely thereby. She conveyed the inference that part of her profits were derived through "tips" from "Morgan Co." The picture of her successful stock market operations was beautifully colored and calculated to attract the credulous and the innocent. The scene presented and the representations made stirred the imagination of the complainant and created within her an appetite for quick riches. She expressed to Louise her earnest desire for speculative profits with a *Page 164 
request to Louise to kindly accept and invest moneys in the market. She had several thousands of dollars to circulate in "something good." The defendant was deeply impressed with the complainant's evident sincere wish for profits and graciously accorded her the requested favor of taking her money and investing it. In the month of March, 1939, pursuant to an agreed plan the complainant advanced Louise the sum of $4,662. She thereupon purchased in her own name the following shares of stocks at the prices set opposite the shares:
 100 shares Barnsdall .......................... $701.00
 100 shares Lockheed Aircraft .................. 1,101.00
 100 shares General Tire Rubber .............. 960.00
 100 shares Delaware Hudson ............... | 1,900.00
 100 shares Lockheed Aircraft ............... |

It was admitted by the parties that the undertaking was a joint venture, whereby the complainant was to advance to the defendant Louise funds for the purchase of stocks, and upon the sale thereof by Louise, she would deposit the invested principal and one-half of the profits in a bank account opened for the purpose in the complainant's name in the East River Savings Bank, New York City (Exhibit C-5). Louise was to retain as compensation for her exhibited wisdom, knowledge and labors, the other one-half of the profits. It may be mentioned that no moneys were deposited in the bank account (Exhibit C-5) as had been contemplated by the complainant.
The complainant charges that the said stocks were sold at the direction of the defendant, that she appropriated the proceeds thereof to her own use and refuses to give an accounting. The proof sustains the complainant's contentions. The evidence shows that the complainant had unbounded faith and confidence in the character and personality of Louise as well as belief in her alleged successful financial accomplishments. She confided in her and trusted her to an extent that seems to have been more admirable in its sincerity, than reasonable in its application. She trusted not wisely, but too well. *Page 165 
In Wiley v. Wirbelauer, 116 N.J. Eq. 391; 174 Atl. Rep. 20,
the court said:
"A joint venture has been defined as a special combination of two or more persons, where in some specific venture, a profit is jointly sought without any actual partnership or corporate designation. 33 Corp. Jur. 841 ¶ 1. The relation of parties to a joint adventure is like that of co-partners; is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits. Bowne v.Windsor, 106 N.J. Eq. 415."
See, also, the case of Cooperstein v. Shapiro, 118 N.J. Eq. 337; 179 Atl. Rep. 29, and also 122 N.J. Eq. 238;192 Atl. Rep. 826; Stein v. George B. Spearin, Inc., 120 N.J. Eq. 169;184 Atl. Rep. 436.
The complainant on or about April 12th, 1939, departed for Europe where she remained for several months. At the hour of her departure from these shores she expressed to Louise an unshakeable belief in her integrity and complete approbation of her sound business judgment; and, at the same time, advised her to sell and dispose of the stocks when she deemed it opportune to do so. She communicated with Louise from Europe by letter and therein reiterated her declarations of trust and confidence.
The defendant opened a brokerage account in the name of her husband, Alphonse (Alfred) Ditter. In this account she deposited moneys she received from the complainant. The stocks purchased through that account were used for the joint venture. Held under it were: 100 shares of General Tire and Rubber stock, 100 shares of Delaware and Hudson stock, and 100 shares of Lockheed Aircraft stock. 100 shares of Lockheed and 100 shares of Barnsdall were also purchased with the complainant's money. They were placed to the account of Louise Ditter. The aforesaid 500 shares of stock remained unsold until July 17th, 1939, when 100 shares of Lockheed were sold; on September 6th, 1939, 100 shares of General Tire and Rubber were sold, and on September 11th, 1939, 100 shares of Delaware and Hudson were sold. Those stocks, with the exception of the Lockheed Aircraft, were sold, not at the direction of Louise, but through the *Page 166 
decision of a Dr. Obeda, who assumed to act for and on behalf of Louise.
The stock in the Louise Ditter account remained inactive until August 2d 1939, when 100 shares of Barnsdall Oil were sold; and August 28th, 1939, when 100 shares of Lockheed Aircraft were sold by Dr. Obeda for the account of Louise Ditter, the defendant. The above mentioned sales were consummated by Dr. Obeda while Louise was in Europe with her husband. They had sailed for Europe in July, 1939. Before leaving for Europe Louise gave the control of her trading accounts to Dr. Obeda aforesaid, without the approval or sanction of the complainant. She had no knowledge of it. Dr. Obeda's handling of the accounts resulted practically in a complete loss and the alleged brokerage accounts were "wiped out." Louise now contends the complainant is indebted to her to the extent of several hundreds of dollars. There is no merit to her contention.
The action of the defendant Louise in giving Dr. Obeda control of the stocks without consulting the complainant and obtaining her consent was unjustified. Parties to a joint adventure have a right to demand and expect from their associates good faith in all that relates to their common interests. Wiley v.Wirbelauer, supra. The evidence warrants the conclusion of a want of good faith in the conduct of Louise.
It may be added that the complainant's version of the facts and that of Louise were wide apart; yet the truth lies between the extremes and I feel that the equities of the case reside with the complainant.
The defendant testified that she was called upon to put up margin from time to time to protect the stocks. She held a variety of stocks in her own name in the aforesaid accounts. An examination of those accounts indicates that the margin, she testified to having placed therein, was largely for the benefit of her own stocks. Practically all of the money used by Louise for margin came out of the Alphonse Ditter account — and it will be observed the money deposited in that account had been the complainant's. The Alphonse Ditter account shows the following withdrawals and transfers: *Page 167 
Jan. 8, 1940 — Check to Louise Ditter ............... $500.00
Mar. 5, 1940 — Transfer to Louise Ditter a/c ........ 78.00
Mar. 11, 1940 — Transfer to Louise Ditter a/c ....... 478.00
July 16, 1940 — Check to Louise Ditter .............. 150.00
Dec. 6, 1940 — Transfer to Louise Ditter a/c ........ 163.44
 _________
 Total ...................................... $1,369.44

When the complainant returned from Europe Louise contacted her and tearfully apprised her of the sad finish of her financial exploits. Hence, this suit.
All the circumstances point to a betrayal of the trust and confidence which the complainant reposed in Louise. Alphonse Ditter seems to be an innocent party in the transactions. A decree for an accounting is advised; and there will be a reference to a master to state an account.