ERSTED, Appellant, v. HOBART HOWRY CO., et al.,
Respondents

(299 N. W. 66.)

(File No. 8418. Opinion filed June 30, 1941.)
Rehearing Denied September 27, 1941.

**Olaf Eidem,** of Brookings, and **M. E. Culhane,** of Minneapolis, Minn., for Appellant.

**Bielski, Elliot & McQuillen,** of Sioux Falls, for Respondents.

ROBERTS, J. This is an action against the Hobart Howry Co., a corporation, M. J. Morin, Maurice Frye and William Wilson, to recover judgment for $1,000, being the amount paid for corporate stock. The stock was issued by the Hobart Howry Co. and was sold in this state to plaintiff. The grounds upon which recovery is sought are that the

shares of the capital stock of this corporation were sold in violation of the statute commonly known as the Blue Sky Law and that plaintiff was induced by fraudulent representations to make the purchase. Trial of the action resulted in findings and judgment in favor of the defendants. Plaintiff appeals.

Findings of fact material to a determination of issues presented are as follows:

"(3) That the defendant corporation was a closed corporation and all of its stockholders were men engaged in other business; that the corporation and none of the defendants were ever engaged in the business of selling the stock of the defendant corporation; that the defendant William Wilson had the privilege of taking $5000 in par value of the stock of the defendant corporation and that he, at plaintiff's request sold $1000 in par value of his said stock to plaintiff; that this was the only sale of stock in defendant company made by the defendant William Wilson; that said sale was made in South Dakota and was an isolated sale."

"(4) That no inducements were made by the said William Wilson to the plaintiff to purchase said stock; that no misrepresentations of any kind were made by the said William Wilson or any of the defendants to the plaintiff; that all of plaintiff's dealings in regard to the purchase of said stock were with the defendant William Wilson only; that the plaintiff had full knowledge of all of the facts in reference to the defendant corporation and its products and had greater knowledge of the same than the defendant William Wilson."

The purpose of Chapter 206, Laws 1927, in effect at the time of the transaction involved in this action as indicated by its title, was "to Prevent Fraud in the Sale of Securities Within the State of South Dakota by Regulating the Offer for Sale and Sale Thereof, by Requiring Registration of Such Securities and Licensing Persons Selling or Offering Securities for Sale." Section 2 defined the term "person" for the purpose of the act as follows: " 'Person' shall mean and include a natural person, firm, copartnership, association, syndicate, joint stock company, unincorporated company or organization or association, trust, trustee of a trust, a corpor-

ation organized under the laws of any state or of the United States or of any territory or possession thereof or of the District of Columbia or of any foreign government. * * *"

This same section defined "issuer" as follows: " 'Issuer' shall mean and include every person who proposes to issue, has issued, or shall hereafter issue any securities."

Section 3 enumerated certain securities to which the provisions of the act were not applicable. Section 4, so far as here pertinent, reads as follows:

"The provisions of this act, except as herein expressly provided shall not apply to sales of the following character:

"(1) Any isolated sale of any security by the issuer or owner thereof, or by a representative for the account of such issuer or owner, such sale not being made in the course of repeated and successive sales of securities of the same issue by such issuer or owner or by such representative for the account of such issuer or owner."

Section 5 provided: "No securities, not exempted by Section 3 hereof, shall be sold within the State of South Dakota, except in a manner exempted by Section 4 hereof, unless or until such securities have been registered as herein provided.

"Registration may be secured by application for registration as provided in Section 6 hereof, or by notification as provided in Section 7 hereof. Such applications or notifications may be made by the issuer or any licensed broker and may pray that the registration be made for the applicant only, or for the applicant and any designated licensed brokers."

Section 6 authorized the commission to deny an application for registration if in the opinion of the commission the proposed sale of securities would result in fraud or if it appeared to the commission that the business of the issuer was not based upon sound business principles.

■ ■ Defendants insist that the transaction involved in this action came within the exception of isolated sales. Plaintiff contends that the sale was not made by defendant Wilson as found by the court in his capacity as owner but as agent for the corporation. The exception in Section 4,

above quoted, is not confined to an owner. A sale by an issuer or its representative is within the meaning of this statute if the sale is in the nature of an isolated transaction, not made in the course of repeated and successive sales of a similar nature. The words "repeated and successive", as stated by the Supreme Judicial Court of Massachusetts in Kneeland v. Emerton, 280 Mass. 371, 183 N. E. 155, 163, 87 A.L.R. 1, "are used by way of contrast to the word 'isolated' employed earlier in the same sentence. In such context an 'isolated' sale means one standing alone, disconnected from any other, and 'repeated and successive' mean transactions undertaken and performed one after the other. * * * two sales of securities, made one after the other within a period of such reasonable time as to indicate that one general purpose actuates the vendor and that the sales promote the same aim and are not so detached and separated as to form no part of a single plan, would be 'repeated and successive transactions'."

 The shares of stock purchased by plaintiff had not been issued by the corporation. Certificate for the ten shares was issued to defendant William Wilson and was endorsed by him and delivered to the plaintiff. A check made out by plaintiff to defendant Wilson, as payee, was cashed by the corporation. It appears that prior to the issuance of the stock certificate to plaintiff on May 2, 1932, eight certificates for one hundred twenty-three shares of stock had been issued. A certificate for twenty-five shares was issued to defendant Frye on June 3, 1932, and no other stock was issued. Hobart Howry and defendants Morin and Frye subscribed to the articles of incorporation. It is the theory of the plaintiff that the transactions with plaintiff and the other stockholders who did not subscribe to the articles of incorporation were sales made in the course of repeated and successive sales and in violation of the statute. The finding of the court as to the understanding among the stockholders as to the ownership and distribution of the stock is supported by the evidence. The corporation was organized for the purpose of manufacturing an air conditioning device, and it was not within the contemplation of the stockholders associ-

ating themselves in such business venture to offer for sale stock or other securities to the public. The law did not require registration as a condition precedent to the issuance of stock to these persons associating themselves in a corporate entity for the purpose mentioned. Hanneman v. Gratz, 170 Minn. 38, 211 N. W. 961; Lindemulder v. Shoup, 258 Mich. 679, 242 N. W. 807. It is immaterial whether the corporation or defendant Wilson was the owner of the shares of stock acquired by the plaintiff or whether he was acting for himself or the corporation. Under the evidence, the sale of the stock to the plaintiff was an isolated sale, not made in the course of repeated and successive sales of a similar nature, and the prohibition of the statute did not apply to the transaction.

The court found that the sale of the stock was made in this state. It is contended that the sale was consummated in Minnesota. But we find no difference between the law of that state and of this state at the time of the transaction in question that would require a different conclusion.

Plaintiff contends that the evidence impels findings to the effect that he relied upon statements and representations made by defendant Wilson as to the perfection of the air conditioning equipment which the defendant corporation intended to manufacture, its adaptability to certain uses and the demand for this equipment, and that the statements were false and made with intent to deceive plaintiff. It would serve no useful purpose to attempt to state the evidence in detail or to review it in this opinion. Suffice to say that the evidence is conflicting; that the trial court, by his decision in this case, has determined that no misrepresentations were made by defendant Wilson; and that a careful reading of the record containing all the evidence taken at the trial satisfies us that not only is this finding not against but is sustained by the clear preponderance of the evidence.

The judgment appealed from is affirmed.

POLLEY, P.J., and RUDOLPH, J., concur.

SMITH, J., not sitting.

WARREN, J., dissents.